UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JASON HEATLEY, on behalf of himself and all others similarly situated,<br><br>　　　　Plaintiffs,<br>　v.<br>LIN ROGERS ELECTRICAL CONTRACTORS, INC. and DOES 1 THROUGH 50, inclusive,<br><br>　　　　Defendants. | Case No.: SACV 22-000042-CJC(KESx)<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND [Dkt. 14] |

I.　INTRODUCTION AND BACKGROUND

Plaintiff Jason Heatley initially filed this putative class action against Defendant Lin Rogers Electrical Contractors, Inc. and unnamed does in Orange County Superior Court. (Dkt. 1 [Notice of Removal], Dkt. 3, Ex. C [State Court Complaint, hereinafter "Compl."].) Plaintiff alleges that Defendant violated several of California's labor laws and regulations. (Compl.) On January 7, 2022, Defendant removed the action to this

Court pursuant to the Class Action Fairness Act or "CAFA." (*Id.*) Plaintiff now moves to remand the case, arguing that Defendant has failed to show that the amount in controversy satisfies CAFA's jurisdictional threshold of $5,000,000. (Dkt. 14 [Plaintiff's Motion to Remand, hereinafter "Mot."].) For the following reasons, Plaintiff's motion is **DENIED**.[1]

## II. LEGAL STANDARD AND DISCUSSION

"CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court . . . [and] intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

"In order to remove a class action filed in state court to federal court, the defendant must file 'a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure[,] . . . containing a short and plain statement of the grounds for removal.'" *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 962 (9th Cir. 2020) (quoting 28 U.S.C. § 1446(a)). Where "'it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold.'" *Fritsch v. Swift Transp. Co. of Ariz.,*

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for March 14, 2022, at 1:30 p.m. is hereby vacated and off calendar.

1  *LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (quoting *Urbino v. Orkin Servs. Of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013)).

Plaintiff's Complaint does not identify a specific amount in controversy. Defendant's Notice of Removal asserts, however, that based upon the allegations in Plaintiff's Complaint and a declaration submitted from one of Defendant's employees, that the amount in controversy exceeds $5,000,000. Plaintiff's primary argument is that this case should be remanded because Defendant has not submitted sufficient evidentiary proof that the amount in controversy is met. (Mot. at 5–14.) But the Ninth Circuit has already foreclosed such arguments when a party launches a facial jurisdictional attack rather than a factual attack. "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite*, 749 F.3d at 1121 (quoting *Safe Air for Everyone v. Meyere*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "For a facial attack, the court, accepting the allegations as true and drawing all reasonable inferences in the defendant's favor, 'determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction.'" *Salter*, 947 F.3d at 964. "A factual attack, by contrast, 'contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings.'" *Id.* (quoting *Safe Air*, 373 F.3d at 1039). "When a factual attack is mounted, the responding party 'must support her jurisdictional allegations with 'competent proof' . . . under the same evidentiary standard that governs in the summary judgment context.'" *Id.* (internal citation omitted).

Here, Plaintiff only launches a facial attack on Defendant's Notice of Removal. Though Plaintiff asserts that Defendant's amount in controversy calculations are unsupported and speculative, (Mot. at 5–14), Plaintiff offers no evidentiary support for those contentions. *See Salter*, at 964 (finding that plaintiff had only made a facial attack to the defendant's notice of removal when plaintiff did not assert that plaintiff

"misinterpreted the thrust of his complaint," "did not offer any declaration or evidence that challenged the factual bases of [the defendant's] allegations," and did not challenge the number of employees the defendant asserted worked for defendant during the class period). Nor is Plaintiff's argument that Defendant's amount in controversy calculations are unsupported accurate. In fact, Defendant submitted a declaration from William Travis Billings, Chief Human Resources Officer for Defendant. (Dkt. 3 [hereinafter "Billings Decl."].) Mr. Billings provided that Defendant has approximately 464 non-exempt employees in California, (*id.* ¶ 11); these non-exempt employees earned approximately $27.40 per hour over the course of the class period, (*id.* ¶ 12); as well as estimations of the number of workweeks, meal periods, rest breaks, recovery breaks, reimbursement claims, wage statement claims, and waiting time claims at issue in this case based upon Plaintiff's allegations, (*id.* ¶¶ 7–24).

Indeed, Defendant's Notice of Removal need only contain a "'short and plain [statement]" containing plausible allegations that all jurisdictional requirements are met and "need not contain evidentiary submissions" at all. *Dart Cherokee*, 574 U.S. at 84; *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (quoting *Barra*, 755 F.3d at 1197-99); *see Muniz v. Pilot Travel Ctrs., LLC*, 2007 WL 1302504, at *7 (E.D. Cal. May 1, 2007) ("There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages.[.]"). Though both parties "*may* 'submit proof . . . whether the amount-in-controversy requirement has been satisfied,'" a plaintiff is not required to do so. *Salter*, 974 F.3d at 963 (emphasis added).

At any rate, Defendant jurisdictional allegations in its Notice of Removal concerning the amount in controversy upon the declaration and Plaintiff's Complaint are reasonable. Defendant asserts that based on the claims in Plaintiff's Complaint and Mr.

Billings' declaration, $14,499,630.50 is in controversy,[2] clearly exceeding CAFA's $5,000,000 requirement.[3] (Notice of Removal ¶¶ 35, 68-70.) Defendant reached that figure by aggregating all of Plaintiff's various wage and hour claims for approximately 464 hourly, non-exempt employees that worked for Defendant during the class period. (*Id.* ¶ 34; Billingsley Decl. ¶12.) Defendant also made individual calculations for each claim. For example, for Plaintiff's failure to pay timely wages claim, Defendant calculated that Plaintiff sought to recover $100 for each failure to pay each employee over 8,136 workweeks, based on employment and payroll data, amounting to $813,600 for this claim alone. (*Id.* ¶¶ 36, 39.) Similar calculations were made for Plaintiff's meal period claim ($2,130,852.23) (*id.* ¶¶ 42-45); rest period claim, ($2,130,852.23) (*id.* ¶¶ 46-49); recovery period claim ($2,841,136.31) (*id.* ¶¶ 50-53); business reimbursement claim ($297,550) (*id.* ¶¶54-55); inaccurate wage statements claim ($2,034,400) (*id.* ¶¶56-59); waiting time penalties claim ($1,718,160) (*id.* ¶¶ 60-63); and possible attorney's fees ($3,346,679.73) (*id.* ¶¶64-67).[4]

Plaintiff, nevertheless, argues that Mr. Billings' declaration unreasonably assumes that Defendant violated each wage and hour law at issue 100% of the time, unsupported by Plaintiff's Complaint. (Mot. at 5-13.) To support that, Plaintiff points to allegations in the Complaint that state that Defendant "often" or "regularly" violated California's

---

[2] In Defendant's Notice of Removal, Defendant asserted that the amount in controversy was 16,733,398.66. In opposition, Defendant explained that there was an inadvertent calculation error regarding the amount in controversy for Plaintiff's meal and rest period claims. (Opp. at 25 n. 5.) The amount in controversy for each claim, according to Defendant, is $2,130,852.23 rather than the $2,841,136.31 initially asserted. (*Id.*)

[3] In a declaration submitted to the Court from defense counsel, attorney Rachel T. Segal provides that Plaintiff failed to meet and confer with defense counsel prior to filing the present motion as required under Local Rule 7-3. (Dkt. 17 [Declaration of Rachel T. Segal in Further Support of Defendant's Opposition to Plaintiff's Motion to Remand] ¶ 3.) Plaintiff's counsel is advised to abide by all local rules moving forward. Failure to meet the basic requirements for filing a motion may result in the Court's refusal to entertain such motions and/or the appropriate sanctions.

[4] Defendant did not provide a dollar estimation for Plaintiff's failure to pay overtime claim, noting that the claim was "vague" but "to the extent that Plaintiff asserts that he is entitled to additional relief on this basis, this would increase the amount in controversy." (Notice of Removal ¶¶ 40, 41.)

wage and hour laws, rather than "all the time." (Mot. at 8.) But as Plaintiff acknowledges, "courts are divided about whether or not a removing defendant may assume a 100% violation rate in asserting an amount in controversy." *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359 (C.D. Cal. Apr. 28, 2015). And the Court agrees with Defendant, (Dkt. 15 [Defendant's Opposition to Motion to Remand, hereinafter "Opp."] at 11–12), that Plaintiff's Complaint is broad enough to place most, if not all, of the applicable pay periods, wage statements, and business expenses across the class period in controversy for every employee in the class since Plaintiff's Complaint directly states that Defendant's conduct amounted to routine and systematic violations of California's wage and hour laws. (*See, e.g.,* Compl. ¶ 26 [it was Defendant's "**policy**" not to compensate employees for overtime appropriately]; ¶ 22 [non-exempt employees were not properly paid due to "Defendant's **uniform failure**" to include all forms of compensation]; ¶¶ 17-18 [Defendant "**uniformly failed** and continues to fail" to pay employees within seven calendar days following the close of the payroll period]; ¶ 33 [employees were "**regularly** denied legally compliant rest breaks"] (emphases added).)

Nor is defendant required to review extensive employee records and date to ascertain the exact violation rate for the purposes of removal. *See Ritenour v. Carrington Mortg. Servs.* LLC, 228 F. Supp. 3d 1025, 1031 (C.D. Cal. 2017) (The removing party's burden is "not daunting," and the removing defendant is not obligated to "research, state, and prove the plaintiff's claims for damages."). Nevertheless, Defendant in opposition painstakingly addresses each one of the calculations Plaintiff challenges and explains why they are reasonable and supported in the law. For example, to calculate the amount in controversy for Plaintiff's meal period and rest break claims, Defendant explains that it estimated that there were three weekly meal and rest break period violations based on the broad and sweeping allegations in Plaintiff's Complaint concerning these claims and Mr. Billings' declaration. (Opp. at 23–25.) District courts have routinely found such calculations reasonable when a plaintiff has placed no limits on such claims in their

complaint, as Plaintiff did here. *See, e.g., Navarro v. Servisair*, LLC, 2008 WL 3842984, at * 9 (N.D. Cal. Aug. 14, 2008) (assuming three weekly meal period violations was reasonable where the plaintiff "[did] not limit his claim by stating that only a certain number of hours went uncompensated"); *Stanley v, Distribution Alternatives, Inc*., 2017 WL 6209822, *2 (C.D. Cal. Dec. 7, 2017) (it is reasonable to assume "three missed rest breaks, and three missed meal breaks per week" where the complaint offers no guidance as to the frequency of these violations). Defendant also explains that it is reasonable for it to assume a 100% violation rate for Plaintiff's wage statement claim because Plaintiff provides no suggestion that any wage statement was ever compliant and presents no evidence to the contrary. *Bermejo v. Lab'y. Corp*., 2020 WL 6392558, at *7 (C.D. Cal. Nov. 2, 2020) (finding that assumption of 100% violation of wage statements reasonable because, based on plaintiff's allegation of "practices and policies of underpaying wages," "every wage statement (covering a two-week period) likely contained an alleged error"); *Vikram*, 2017 WL 4457575, at *4 (finding reasonable defendant's 100% violation rate assumption because of plaintiff's lack of evidence to the contrary and allegations suggesting the off-the clock work occurred every day).

Defendant also persuasively argues that even more conservative calculations would easily satisfy CAFA's amount in controversy requirement. Specifically, Defendant argues that even assuming a 30% violation rate for recovery periods ($639,285.84) (Opp. at 27), a $297,550.00; a 50% violation rate for Plaintiff's waiting time penalty claim ($859,084.80) (Opp. at 28), and 25% of attorneys' fees only for Plaintiff's wage and hour claim ($508,500.00) (Opp. at 30), Plaintiff meets the amount in controversy. And courts have routinely found such calculations reasonable. *See, e.g., Ortega v. ITS Technologies*, 2021 WL 4934978 at * 5 (C.D. Cal. Oct. 22, 2021) (75% violation rate for waiting time penalties); *Cortez v. Parker-Hannifin Corp*., 2020 WL 5905435 at *3 (C.D. Cal., Oct. 6, 2020) (75% violation rate for waiting time penalties); *Marquez v. Toll Global Forwarding (USA) Inc*., 2018 WL 3046965 at *4 (C.D. Cal., June 19, 2018) (50% violation rate for waiting time penalties); *Paul, Johnson, Alston & Hunt v. Graulty*, 886

F. 2d 26, 272 (9th Cir. 1989) (noting with approval that the "bench mark" percentage for the fee award should be 25 percent.") (citation omitted).

Plaintiff's attempt to limit the scope of his allegations by pointing to words used in his Complaint, describing the rate of Defendant's violations as "often" or "not provided with at all" is not compelling. Indeed, Plaintiff's complaint alleges that Defendant engaged in a "pattern and practice" of violating the Labor Code. (*See, e.g.* Compl. at ¶¶ 17, 18, 22, 26, 33, 79 ["Defendants have a common policy, pattern, and practice of failing to compensate Plaintiff and members of the Class[.]".) And Defendant "is not required to comb through its records to identify and calculate the exact frequency of violations." *Tajonar v. Echosphere*, 2015 WL 4064642, at *3 (S.D. Cal. July 2, 2015). Nor can "Plaintiff . . . simply sit silent and take refuge in the fact that it is Defendant's burden to establish the grounds for federal jurisdiction. This is especially the case since the knowledge in question–how often Plaintiff claims he was made to work overtime [or missed breaks]–is uniquely within Plaintiff's possession." *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014); *see also Moppin v. Los Robles Med. Ctr.*, 2015 WL 5618872, at *3, *5 (C.D. Cal. 2015) (denying remand where plaintiff "offer[ed] no evidence rebutting this violation" rate, despite the opportunity to do so.

In sum, Defendant bases its amount in controversy on reasonable calculations supported by Plaintiff's own Complaint and a declaration from Mr. Billings, who is uniquely situated to speak to the scope of Defendant's employment activities in California. Plaintiff presents absolutely no evidence to rebut those calculations nor does he persuasively assert that Defendant was required to do more. Accordingly, Defendant has satisfied its burden to invoke CAFA's jurisdiction.

//
//
//
//
//

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion is **DENIED**.

DATED:    March 10, 2022

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE